# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN THOMPSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 20-cv-3550** |
| | : | |
| **JOHN WETZEL,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Joseph F. Leeson, Jr.**                                                  **December 17, 2020**
**United States District Judge**

Plaintiff Brian Thompson, a prisoner currently incarcerated at SCI Phoenix, filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations related to the destruction of his property during the transfer of prisoners from SCI Graterford to SCI Phoenix.  Thompson names as Defendants: (1) Secretary of Corrections John Wetzel, (2) Superintendent of SCI Phoenix Tammy Ferguson; (3) Chief of Security Kenneth Goodman, (4) John Does 1-20, and (5) the Pennsylvania Department of Corrections.  All Defendants are named in their individual and official capacities.  Thompson seeks to proceed *in forma pauperis* and has submitted a copy of his institutional account statement.  For the following reasons, the Court will grant Thompson leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.      FACTUAL ALLEGATIONS[1]

Thompson was previously incarcerated at SCI Graterford.  As that prison was closing in July 2018, inmates and their property were relocated to SCI Phoenix.  Thompson alleges members of a Corrections Emergency Response Team ("CERT") took custody of prisoners' property in connection with the move.  (ECF No. 1 at 6.)  Thompson alleges that his property was destroyed by CERT officials.  The material included personal property, legal documents, and appliances.  (*Id.* at 6.)  He alleges that members of the CERT had tattoos espousing white supremacy.  (*Id.*)  Thompson asserts that the John Doe Defendants were acting at the direction of Defendant Wetzel. (*Id.*)  He also alleges in conclusory fashion that the named Defendants:

> failed to train and supervise subordinate corrections officers who while temporarily working at SCI Phoenix to facilitate the move of inmates from SCI Graterford willfully and maliciously destroyed and defaced personal property belonging to Plaintiff including but not limited to; religious artifacts, legal and private documents and family photographs with obscene and racist drawings e.g. penises, swastikas and racial epithets.

(*Id.* at 5.)

Thompson alleges that these events deprived him of his property and caused him emotional injury.  (*Id.* at 6.)  Thompson asserts claims under the Civil Rights Act for violations of his Fourth, Eighth and Fourteenth Amendment rights and seeks money damages.  (*Id.* at 3, 6.)

## II.     LEGAL STANDARD

The Court grants Thompson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a

---

[1] The allegations are taken from Complaint.  (*See* ECF No. 1.)

[2] However, as Thompson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Thompson is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Thompson has failed to state a § 1983 claim.

### A.   Eighth Amendment Claim

The destruction of Thompson's personal property by the John Doe Defendants does not provide a basis for a claim under the Eighth Amendment.  Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety."  *Id.*   The destruction of property does not constitute a sufficiently

serious deprivation that would give rise to a claim under the Eighth Amendment.  *See Wongus v. Correctional Emergency Response Team*, 389 F. Supp. 3d 294, 301-02 (E.D. Pa. 2019) (concluding that plaintiff's allegations "that correctional facility staff violated his Eighth Amendment right to be free from cruel and unusual punishment by defacing his family photo with a swastika," while "repugnant and detrimental to the orderly administration of a prison, and should be cause for serious disciplinary action against the responsible party, if known[,]" did not "rise to the level of an Eighth Amendment violation"); *Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*,  2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).  Accordingly, the Court will dismiss Thompson's Eighth Amendment claim against the John Doe Defendants with prejudice.

### B.      Fourth Amendment Claim

The Court understands Thompson's reference to the Fourth Amendment to attempt to state an unlawful seizure claim against the John Doe Defendants based on the loss of his personal property.  To the extent he is basing his claim on the loss, destruction, or defacement of his property, he has not stated a plausible claim under the Fourth Amendment because "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *see Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells."

4

(citing *Hudson*, 568 U.S. at 529)); *see also Parrish v. Corrections Emergency Response Team*, Civ. A. No. 18-4871, 2019 WL 1596337, at *3 (E.D. Pa. Apr. 12, 2019) (concluding prisoner plaintiff failed to state claim for violation of Fourth Amendment where plaintiff alleged that CERT members destroyed and defaced personal property during process of transferring plaintiff from SCI Graterford to SCI Phoenix).  Accordingly, the Court will dismiss Thompson's Fourth Amendment claim against the John Doe Defendants with prejudice.

   C. **Fourteenth Amendment Claim**

   Thompson is also pursuing a Fourteenth Amendment claim against the John Doe Defendants, based on the loss and/or destruction of his property.  However, there is no basis for a due process claim because Pennsylvania law provides Thompson with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).  Accordingly, Thompson has not stated a basis for a due process claim because state law provides him a remedy for his destroyed property.  *See McNeil v. Grim*, 736 F. App'x 33, 35 (3d Cir. 2018) (per curiam) ("[E]ven if McNeil claimed that the prison grievance procedures were constitutionally inadequate, Pennsylvania's state tort law would provide an additional adequate remedy.").  Accordingly, the Fourteenth Amendment due process claim is not sustainable and will be dismissed with prejudice.

Thompson also appears to be raising a race-based equal protection claim under the Fourteenth Amendment based on his allegations concerning John Doe Defendants' racist tattoos and that Defendant drew racial symbols on his photographs.  However, nothing in Thompson's Complaint suggests that he was treated differently due to his membership in a protected class. Indeed, prisoners do not constitute a protected class for Fourteenth Amendment purposes, *see Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001), and Thompson has not alleged that he was treated differently from others who were similarly situated, *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (explaining that to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003))).  To the contrary, the Complaint suggests that many inmates were subjected to the same or similar conditions of which he complains.  Accordingly, the Court will dismiss the Fourteenth Amendment equal protection claim against the John Doe Defendants with prejudice.

### D.    Emotional Injury Claim

Thompson states that he suffered emotional harm from the destruction of his property. The Prison Litigation Reform Act (PLRA") requires a prisoner to "demonstrate physical injury before he can recover for mental or emotional injury."  *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (citing 42 U.S.C. § 1997e(e)).  The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury or the

commission of a sexual act (as defined in section 2246 of Title 18)." *Marrow v. Pennsylvania*,

Civ. A. No. 18-0931, 2018 WL 4963982, at *4 (M.D. Pa. Oct. 15, 2018) (quoting 42 U.S.C. §

1997e(e)).  To recover compensatory damages for mental or emotional injury suffered while in

custody, a prisoner bringing a § 1983 action must demonstrate less than significant, but more

than a de minimis, physical injury.  *See* 42 U.S.C. § 1997e(e); *see also Mitchell v. Horn*, 318

F.3d 523, 535 (3d Cir. 2003); *but see Prillerman v. Fromhold*, 714 F. App'x 184, 186 (3d Cir.

2017) (stating that the PLRA does not limit a prisoner's ability to obtain nominal or punitive

damages (citing *Mitchell*, 318 F.3d at 533)).  Because Thompson does not allege that he suffered

any physical injury, he may not recover compensatory damages for any emotional harm resulting

from the destruction of his property.

> **E.      First Amendment Claim**

The Court understands Thompson's allegations about the loss of his legal materials to

also attempt to state a First Amendment claim based on a denial of access to the courts.  This

claim also fails.  The loss of legal material may constitute a First Amendment claim based on a

denial of access to the courts if a prisoner can assert that the loss caused an actual injury.  *See*

*Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) ("A prisoner making

an access-to-the-courts claim is required to show that the denial of access caused actual injury.")

(quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  In other words, a prisoner claiming that he

was denied access to the courts must allege an injury traceable to the conditions of which he

complains.  *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal

of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in

underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a

"nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  "[T]he underlying cause of action, . . . is an element that must be described in the complaint."  *Id.*

While Thompson asserts that his legal material was lost, he has not alleged that he suffered an actual injury in the form of a lost nonfrivolous and arguable claim.  Accordingly, the access to courts claim fails.  However, because the Court cannot state at this time that Thompson would never be able to state a plausible claim, he will be permitted to file an amended complaint if he is able to cure the defect the Court has identified above.

### F.     Official Capacity Claims

Thompson names Defendants Ferguson, Wetzel, Goodman and John Does 1-20 in their individual and official capacities.  In addition to the reasons already stated, the official capacity claims against these Defendants for money damages may not proceed because the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.  Accordingly the official capacity claims are dismissed with prejudice.

G.       **Supervisor Liability/Failure to Train Claims**

Thompson's individual capacity claims against Ferguson, Wetzel and Goodman appear to be based on their roles as supervisory officials and/or that they failed to train subordinate corrections officials.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Thompson asserts only that the John Doe Defendants were "acting pursuant to the directives of the named defendants," presumably Wetzel, Ferguson and Goodman.  (ECF No. 1 at 6.)  He also alleges in conclusory fashion that the named Defendants failed to train and supervise subordinate corrections officials.  This is not sufficient to state plausible claims since there is no allegation that any Defendant maintained with deliberate indifference a policy, practice or custom which directly caused constitutional harm, or was personally involved or acquiesced in the destruction of Thompson's legal material and other property.

Additionally, "[u]nder Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees."  *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).  A claim for supervisory liability or liability based upon a failure to train involves four

elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). A supervisor may be held liable where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and where that failure to train "actually causes injury," a supervisor may be held liable. *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989). In addition,

> [i]n resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91. Further, as the United States Supreme Court made clear in *City of Canton* in the context of a municipal defendant, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." *Id.*

Thompson has only made conclusory failure to train allegations. The bare allegations, without further explanation, are insufficient to plausibly allege that there was a specific policy or custom regarding the destruction of inmate property during the move to SCI Phoenix that created an unreasonable risk of constitutional injury. Accordingly, the supervisor liability/failure to train claim will also be dismissed as insufficiently pleaded under § 1915(e)(2)(B)(ii). However, like the access to courts claim, the Court cannot say at this time that Thompson would never be able to state a claim and, thus, leave will be granted leave to amend this claim as well.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Thompson's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143 (3d Cir. 2019) (per curiam) (affirming dismissal of amended complaint where inmate "alleged in his complaint that when he and all other prisoners were moved from SCI Graterford to SCI Phoenix, many prisoners' possessions were destroyed or damaged, including his legal materials").  The Eighth Amendment, Fourth Amendment, and Fourteenth Amendment claims, and all official capacity claims are dismissed with prejudice since any attempt at amendment would prove futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile.").  The First Amendment claim and the supervisor liability/failure to train claim are dismissed without prejudice and Thompson will be permitted to file an amended complaint in the event he can cure the defects the Court has identified in those claims.  An appropriate Order accompanies this Memorandum.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**