UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

BRIAN THOMPSON, :
                 Plaintiff, :
                  :
v. : No. 5:20-cv-03550
                  :
SECRETARY JOHN WETZEL PA Dept. of :
Corrections, SUPERINTENDENT TAMMY :
FERGUS0N, SCI PHOENIX, PA Dept. of :
Corrections, C. O. 1 WANAMAKER, SCI :
PHOENIX, COUNSELOR THOMAS, SCI :
PHOENIX, SERGEANT GILLIAN, SCI :
PHOENIX, A. KING, PSS SCI PHOENIX, :
TERESA SNYDER, SCI PHOENIX, and :
KENNETH GOODMAN, C.E.R.T. SCI :
PHOENIX, :
                 Defendants : :

**O P I N I O N**

**Joseph F. Leeson, Jr.**                                                            **July 22, 2021**
**United States District Judge**

**I.**        **INTRODUCTION**

In this lawsuit, Plaintiff Brian Thompson, a prisoner currently incarcerated at SCI Phoenix, alleges that when he was transferred to that facility from a previous correctional facility, corrections officers purposefully defaced and destroyed his property, including legal documents. Currently before the Court is Thompson's Amended Complaint, which was filed in response to this Court's December 17, 2020 Opinion and Order dismissing his initial Complaint and the myriad claims contained in it.[1] The December 17 Opinion and Order granted Thompson

---

[1]     Thompson's initial Complaint was filed when Thompson was proceeding *pro se* and with an application to proceed *in forma pauperis*. Thompson has since retained pro bono counsel, who filed the Amended Complaint. The December 17, 2020 Opinion and Order were issued pursuant to this Court's obligation to screen complaints filed by litigants seeking to proceed *in*

leave to file an Amended Complaint to assert a single claim for violation of his First Amendment rights, as well as to assert supervisor liability and liability based upon a failure to train theory. The Amended Complaint has purported to do just that. However, because, Thompson's Amended Complaint remains incapable of stating a viable claim upon which relief can be granted, it shall be dismissed.

## II.    BACKGROUND

The following allegations in the Amended Complaint are relevant to the analysis contained in this Opinion.[2]  In July 2018, Thompson, along with other prisoners, was transferred from SCI Graterford to SCI Phoenix pursuant to directives of the Pennsylvania Department of Corrections.  *See* Amended Complaint ("Am. Compl."), ECF No. 17, ¶¶ 17-18.  In order to facilitate the transfer of prisoners and their personal property to SCI Phoenix, corrections officers from other correctional facilities were temporarily assigned to assist the officers at SCI Graterford and SCI Phoenix.  *Id*. ¶ 19.  Thompson, who is African American, avers that he observed that many of the temporarily assigned officers were wearing white supremacist tattoos and removed their name tags ostensibly so they could not be identified by inmates.  *Id*. ¶¶ 20-21.

According to the Amended Complaint, upon the delivery of his personal property to his new cell at SCI Phoenix, Thompson saw that items were either missing, vandalized, or defaced with racial epithets and Nazi symbols.  *Id*. ¶ 22(a).  The affected property included legal documents, photographs, and personal items purchased at the prison commissary.  *Id*.  Thompson

---

*forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). The instant Opinion and its associated Order are being issued pursuant to the same screening obligation, notwithstanding that Thompson has since retained counsel.

[2]    As explained further below, Thompson fails to plausibly state a First Amendment claim. The Court does not here recite allegations related to the nature of the liability Thompson attempts to establish—supervisor/failure to train liability—since without a plausible constitutional violation, the issue of liability for any such violation is moot.

states he complained to prison officials by submitting the appropriate inmate grievance forms, however, he was unable to receive relief and his "[h]is appeals were denied." *Id*. ¶ 22(b). Due to the nature of the words and drawings used to deface his property, in addition to the nature of the tattoos on some of the corrections officers, Thompson alleges the intent to destroy and deface his property was racially motivated. *Id*. ¶ 22(c).

As germane to his First Amendment Claim, Thompson states that the destruction of his legal documents caused him to suffer an actual injury in the form of a lost non-frivolous and arguable legal claim. *Id*. Specifically, he states that the loss of his legal documents caused him to lose a claim for relief in pending PCRA litigation. *Id*. Thompson alleges the lost or destroyed legal documents contained correspondence with his former attorney and private investigators along with exculpatory information and evidence of error that he believes would have resulted in a re-sentencing to a 3rd degree murder charge with a sentence substantially less than his current life sentence or a new trial. *Id*.

### III.  LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2)(B)(ii), when a litigant applies for leave to proceed *in forma pauperis*, a court is required to dismiss a complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Although the Court must accept the factual allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion

couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is the Court "required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which [the Court] may take judicial notice." *Venizelos v. Bittenbender*, No. 3:19-CV-01219, 2020 WL 7775457, at *3 (M.D. Pa. Dec. 8, 2020) (citing *In re Washington Mut. Inc.*, 741 F. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. Of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008)), *report and recommendation adopted*, No. 3:19-CV-1219, 2020 WL 7773905 (M.D. Pa. Dec. 30, 2020); *see Grace v. Fox*, No. 19-CV-4943, 2020 WL 2745743, at *1 n.5 (E.D. Pa. May 27, 2020) ("On § 1915 screening, this Court need not 'accept as true anything in the complaint which contradicts facts of which the court may take judicial notice.'" (quoting *Banks*, 568 F. Supp. 2d at 588-89)).

## IV.  ANALYSIS

As this Court explained in its December 17, 2020 Opinion, the loss of legal material may support a First Amendment claim[3] based on a denial of access to the courts if a prisoner can assert that the loss caused an actual injury. *See Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996))). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir.

---

[3] Thompson's constitutional claim is brought by way of the right of action provided for in 42 U.S.C. § 1983. *See* Am. Compl. ¶ 4. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In pleading such a claim, "the underlying cause of action . . . is an element that must be described in the complaint." *Id*.

As noted previously, Thompson asserts that the deprivation and destruction of his personal property, and specifically his legal documents, caused him to lose a non-frivolous, arguable claim for relief in pending PCRA litigation. *See* Am. Compl. ¶ 22(c). He states he was "engaged in PCRA litigation at the Chester County Court of Common Pleas during the move From SCI Graterford to SCI Phoenix," *id*. ¶ 29, and that "[t]he loss of legal documents . . . adversely affected [his] ability to submit documents needed to support his PCRA action in the Chester County Court of Common Pleas (CP-15-CR-0003498-2005) and the Pennsylvania Superior Court for the Eastern District of Pennsylvania (2502 EDA 2018). (See Order from the Chester County Court of Common Pleas dated August 6, 2018 at Exhibit D)," *id*. ¶ 30.

However, Thompson's allegations regarding a non-frivolous and arguable claim for PCRA relief are belied by documents of which this Court is able to take judicial notice. On May 21, 2019, the Pennsylvania Superior Court issued an Opinion on the appeal of the August 2, 2018 Order denying the PCRA petition Thompson states was pending at the time of the alleged constitutional violation. That Opinion provides in relevant part as follows:

> On July 7, 2005, Appellant shot and killed the mother of his children, Crystal Thompson. At trial, Appellant claimed either that the shotgun went off accidently when he tripped, or that it inadvertently fired while he was cleaning and playing with the gun because he was under the influence of drugs and alcohol. To rebut these claims, the Commonwealth presented the testimony of Appellant's friend, Richard Mack ("Mack"), who contradicted Appellant's testimony that he had been

drinking or doing drugs that morning. Appellant was found guilty of first degree murder and sentenced to life imprisonment.

Appellant filed a timely direct appeal. On appeal, he contended that the Commonwealth failed to turn over *Brady* material about Mack's parole status and elicited false testimony from Mack that he was not on parole at the time of the murder. *See Brady v. Maryland*, 373 U.S. 83 (1963). On August 24, 2007, this Court affirmed the judgment of sentence. *Commonwealth v. Thompson*, 935 A.2d 24 (Pa. Super. 2007) (unpublished memorandum). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on November 19, 2008. *Commonwealth v. Thompson*, 960 A.2d 840 (Pa. 2008).

Appellant, acting *pro se*, filed a timely PCRA petition. The PCRA court appointed counsel, although Appellant elected to proceed *pro se* with stand-by counsel. In his petition, Appellant raised numerous issues including challenging his trial counsel's effectiveness for failing to request a bill of particulars for all of the prior convictions of Mack. Following a hearing, the PCRA court denied Appellant's first PCRA petition. This Court affirmed the denial on August 23, 2011. *Commonwealth v. Thompson*, 32 A.3d 840 (Pa. Super. 2011). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Thompson*, 38 A.3d 825 (Pa. 2012).

On September 21, 2012, Appellant, acting *pro se*, filed his second PCRA petition. In his petition, Appellant argued that he was entitled to relief under the newly-discovered facts and governmental interference exceptions to the PCRA time bar, based on the fact that the Commonwealth never informed him that Mack had a pending criminal case at the time of Appellant's trial. The PCRA court dismissed the petition as untimely, and we agreed. *Commonwealth v. Thompson*, 105 A.3d 42 (Pa. Super. 2014) (unpublished memorandum). Our Supreme Court denied his subsequent petition for allowance of appeal. *Commonwealth v. Thompson*, 105 A.3d 42 (Pa. 2014).

On May 1, 2018, Appellant filed his third PCRA petition, in which he alleged that he had discovered new evidence of previously undisclosed prior convictions of Mack. Appellant filed a memorandum of law in support of his petition and the Commonwealth filed its Answer. The PCRA court issued notice of its intent to dismiss the petition as untimely and Appellant filed a response. On August 2, 2018, the PCRA court dismissed the petition. This *pro se* appeal followed.

Appellant presents the following two issues in his brief:

> 1. Did the trial court err by dismissing the properly filed PCRA petition without a hearing where the Appellant established that the Commonwealth suppressed evidence of numerous felony convictions by its witness-in-chief?

>2. Does the trial court's failure to address or otherwise dispose of the July 9, 2018 properly[-]filed motion to amend the PCRA and proposed amendment constitute an abuse of discretion and clear legal error?

*Commonwealth v. Thompson*, No. 2502 EDA 2018, 2019 WL 2184972, at *1-*2 (Pa. Super. Ct. May 21, 2019) (footnotes omitted).  The Superior Court found, in relevant part, as follows:

>Appellant concedes that his petition is untimely, but asserts that he has newly discovered evidence in the form of Mack's "numerous felony drug convictions," which he discovered on March 8, 2018, from his private investigator. Appellant's brief at 8. Appellant contends that he was not required to exercise due diligence, since it was "patently unreasonable" for him to conclude that Mack had any more unknown prior convictions after the conclusion of his second PCRA petition in 2012. Appellant's brief at 13-14. The trial court found Appellant's argument unconvincing and we agree.
>
>The facts at issue are Mack's prior convictions, which Appellant alleges that he discovered for the first time in March of 2018. However, Appellant's direct appeal and two previous PCRA petitions already raised allegations about Mack's criminal history. Appellant was well-aware that Mack had a criminal record before the conclusion of trial, as trial counsel brought the fact that Mack was out of jail on parole at the time of the murder to the attention of the jury, Commonwealth, and trial court. N.T. Trial, 3/8/06, at 107-09. Additionally, Appellant's second PCRA petition challenged the Commonwealth's failure to disclose Mack's pending charges at the time of trial. Therefore, even if Appellant was not aware of Mack's entire criminal record at the conclusion of his second PCRA petition in 2012, Appellant "was [at the very least] put on notice that there was information unknown to him about Mack's criminal history and that further investigation may be necessary" at that time. Trial Court Opinion, 9/20/18, at 15.
>
>In his brief, Appellant argues that he had no due diligence obligations after his second PCRA petition was dismissed, because he had no reason to believe that he did not have Mack's entire criminal record. Appellant's brief at 14. This conclusion fails to account for the fact that "due diligence demands that the petitioner take reasonable steps to protect his own interests." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015). Appellant concedes this point, admitting that the information recovered during the pendency of his second PCRA petition led him to continue to investigate Mack's prior criminal record. Appellant's brief at 14-15. In fact, Appellant contends that immediately following the conclusion of his second PCRA petition he spent years seeking an investigator and an attorney to assist him. *Id.* at 24-25. Thus, by Appellant's own admission, he was aware of the need for further investigation into Mack's criminal record as of 2012.
>
>Consequently, we reject Appellant's attempt to tailor his newly-discovered fact analysis to his alleged 2018 discovery.

*Id.* at *2-*3.

From the Superior Court's May 21, 2019 Opinion, of which this Court may take judicial notice, *see, e.g., Brookins v. Bristol Twp. Police Dep't*, No. 2:14-CV-0252, 2015 WL 12911990, at *1 n.1 (E.D. Pa. June 3, 2015) (considering the procedural history of a plaintiff's criminal case and noting "[w]e may consider this information, as it is a matter of public record" (citing *Banks*, 568 F. Supp. 2d at 588)), *aff'd*, 642 F. App'x 80 (3d Cir. 2016), the following facts cannot be disputed: (1) the PCRA litigation Thompson states he was pursuing at the time of the alleged deprivation in July 2018 was based on the filing of his *third* PCRA petition; (2) this third petition was patently untimely; (3) with respect to Thompson's argument that he was excepted to the one-year PCRA filing deadline based on "newly discovered evidence" of "Mack's" prior convictions, Thompson's direct appeal and two previous PCRA petitions "already raised allegations about Mack's criminal history," and Thompson "was well-aware that Mack had a criminal record before the conclusion of trial, as trial counsel brought the fact that Mack was out of jail on parole at the time of the murder to the attention of the jury," and most significantly, (4) this third PCRA petition was filed on May 1, 2018, at least *two-months before* Thompson's transfer from SCI Graterford to SCI Phoenix and therefore two-months before the alleged destruction of his legal papers.

From these facts, it is simply implausible to suggest that had Thompson's legal papers not been defaced or destroyed during his transfer, he would have been able to maintain a non-frivolous, arguable claim for PCRA relief. *See Grace*, 2020 WL 2745743, at *1 n.5 ("On § 1915 screening, this Court need not 'accept as true anything in the complaint which contradicts facts of which the court may take judicial notice.'" (quoting *Banks*, 568 F. Supp. 2d at 588-89)). Put differently, Thompson cannot plausibly claim that the destruction of his legal papers caused him

to lose a non-frivolous PCRA claim as raised in his third PCRA petition, because his third PCRA petition was filed well before the alleged destruction of his property. Any documents in support of PCRA relief in Thompson's possession would have been included with that filing on May 1, 2018; the subsequent destruction of such documents in July 2018 would therefore not have impacted the viability of his claim. Moreover, with or without the information that Thompson alleges was maliciously destroyed during his transfer, his claim for PCRA relief—again, his third bite at the apple—was clearly untimely, and, as explained in detail by the Superior Court, he could avail himself of no avenue around this roadblock.

Because Thompson is incapable of plausibly alleging that the destruction of his legal documents in July 2018 caused him to lose a PCRA claim raised in a petition filed two months earlier in May 2018, which claim was found to be patently untimely, Thompson has failed to plausible allege a constitutional injury. As a result, he is unable to state a viable claim for violation of his First Amendment rights based on deprivation of access to the courts, and the sole claim asserted in his Amended Complaint necessarily fails.

V.     **CONCLUSION**

For the reasons set forth above, Thompson's Amended Complaint fails to state a claim upon which relief can be granted. It is therefore dismissed, with prejudice.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge